Thank you. Please be seated. And we'll take up our next case, Bakery and Confectionary Union v. Just Born. Good morning. May it please the Court, I'm David Rifkin on behalf of Just Born. The pension fund arguments here rests upon the assumption that Just Born is attempting to shirk its contribution duties. This is not true. Just Born is attempting to shirk its contributions for employees for whom it has an obligation to contribute, but not for those that it does not, whether they be new employees, non-bargaining union employees, or others. The pension fund has never argued, Your Honors, that Just Born's actions constitute partial withdrawal, despite the fund's right under ERISA's longstanding withdrawal provisions for determining whether or not a withdrawal has taken place. Instead, Just Born is attempting, the fund is attempting to address this very issue under Section 305. And our view, of course, is that Section 305 just does not fit what the fund is seeking it to do. To explain why ERISA's Section 305 is not addressed to fund concerns, I would like to make briefly four points. The first is the general operation of Section 305, what it covers and what it does not cover. The second are the definitional provisions that make this meeting clear. The third is the context, including on-point precedent from a Second Circuit that supports our reading. And the fourth is a canon against implied repeal. As to the first point, the provision, provisions of Section 305E-3C, which is an issue here, authorizes the fund that has been certified as being in critical status to impose updated contribution schedule on bargaining parties to an expired collective bargaining agreement that requires contributions of a fund. To emphasize, that provision covers what employees must pay to be extended to participate in the fund. It does not address contributions for employees that an employer has never agreed to make a contribution in the first place. And if, again, the pension fund has claims that Judge Boone has somehow withdrawn from the fund, it needs to go to withdrawal liability provisions of ERISA have been in effect since approximately 1980. Not attempt to shoehorn 305 to address those issues. To emphasize, those two problems, continued participation in the fund and withdrawal have different policy implications have been addressed for different sections by Congress. In Section 305 really was designed solely to ensure that continued participation in a critical status fund contributed at appropriate levels. So in the context of this case, we've got a situation, the fund had become critical, is that right? That is correct, Your Honor. And you were given sort of choices, I guess, in terms of, how does that work? You're given choice, they give you a default way in which you can go, and then there's a preferred way and sort of incentive for you to go there. To explain briefly, the fund is in critical status, the CBA has expired, you continue to bargain under canons of federal labor law, you have to, if 305 did not exist, you would be bound by the contribution schedule that existed and was reflected in the CBA. What 305E does, it gives you an opportunity to have two days of CBA expiration if the parties, meaning the employee and the union, have not come to accept one of the schedules put forward by the fund. What it does not give you a right to do in a situation like this, where an impasse has been declared and under canons of federal labor law, once an impasse has been declared, an employer has a right to impose the provisions of its best and final offer subject only to one cabinet principle, and that cabinet principle... Who declared the impasse? Yes, Your Honor, we've declared an impasse... Right, the employer declared the impasse, so where do you find in any statute the right for the employer to declare an impasse in the first place? That is, we need to remember, Your Honor, that both ERISA as a whole and 305 are superimposed on existing national labor law architecture, namely National Labor Relations Act, and if you look at Section 8 of National Labor Relations Act, it imposes both rights and obligations on an employer. An employer has an obligation to... Right, so where is the right of the employer to declare an impasse? That's what I'm looking for. That comes out of an NLRA, but the way it's linked to 305... Comes out of what? NLRA, National Labor Relations Act. Judge Ajay, I apologize, but the way it's... Okay, but then where in the NLRA? It must say it somewhere. That section of NLRA has been construed extensively, Your Honor, by the courts. In the first instance, of course, by National Labor Relations Board. What section of the NLRA has been construed significantly? Section 8. Section 8, and so you're telling me that in Section 8, it gives employers the right to declare an impasse? It gives employer... It has some cabining, consistent obligations to... You cannot just declare an impasse immediately. You have to bargain in good faith. If you bargain in good faith, you have time. Yes, you have a right to determine an impasse, and very importantly, if I can just link it to Section 305. Section 305 talks about bargaining party, which is defined in Section 305J. That, in turn, incorporates, cross-references the definition to contribute that is in Section 4212. The obligation to contribute, which is the key provision here, says specifically that your can have a rise from the CBA, which is not the case here. CBA haven't been expired. There's extensive case law, the Linton case in the Supreme Court, that says CBA has to be construed consistent with provisions of contract law, so there's no dispute that CBA is expired. It has no binding force as far as obligations to contribute are concerned. Then the other provision is National Labor Relations Law. I know of this case that in a circumstance where the pension plan is in critical condition, that there are changes to this normal flow of contract rights because of the designation of critical stage. Your Honor, the very section of 305, 305E, that deals with it, while it addresses in a very targeted way how to help funds in critical status, not only does not abolish, it incorporates the definition of a bargaining party in 305J, which in turn incorporates the definition of an obligation to contribute in 4212, and I think we can all agree that our obligation to contribute stems exclusively from federal labor management law. The key provision, if I may explain briefly, the way it works is an employer has an obligation to bargain. Prior to the National Labor Relations Act, you did not have to do it. The sine qua non of the employer matching right to balance his obligation to bargain is a right to declare an impasse that Judge Decker was interested in, and upon declaring an impasse to make a best and final offer that has to be considered properly to be a fair labor practice. We do know now that their offer was a fair labor practice because they were taken to NRB, National Labor Relations Board, and the National Labor Relations Board said specifically your offer bifurcated your labor force for purposes of participation in a fund. The old employees are in. You are fully bound to continue to contribute in the funds. The new employees are not. They are covered by the 401K, which, by the way, Judge Boone is making. Was your client a bargaining party before the impasse was declared? Of course you are considered to be a bargaining party when you bargain. They were a bargaining party when an impasse was declared in regard to the employees. Was there a point at which your client ceased being a bargaining party, and at which point was that? If I may explain, Judge Decker, it's the question always is with regard to whom. Our client That question is answered. Isn't that your whole argument, that you're not a bargaining party, and that statute does not apply to you? No, Your Honor. Not at all. So you are a bargaining party. We are a bargaining party with regard to those employees that we have elected, pursuant to the terms of a best and final offer, to remain in the funds. So a bargaining party with regard to old employees, Judge Wynn, and not a bargaining party with regard to new employees, that is absolutely permissible. NLRB concluded that it was not an unfair labor practice for your 5E. Has that ever been held to be so, what you're saying? Again, we have the virtue here of the agency with the primary jurisdiction over very Has that ever been interpreted to be NLRB has so interpreted, Judge Wynn, because That a bargaining party is only for that group of people who are with you and not the other group? No. I understand your question. Let me put it this way. The bargaining What's the answer? Is that the answer you're telling me? Where does that come from? That comes from statutory definition. If I can elaborate, the bargaining party is the party with an obligation to contribute. An obligation to contribute, and I appreciate this question because it's very important, is inherently a granular, if I may, Judge Wynn, it is inherently a granular definition. There are always some employees who are covered. There are some employees who are not covered, secretarial staff, in-house lawyers, workers at certain facilities that are not covered. In this case, new employees versus old employees based upon the term of, and one excellent example of granularity here, there's a whole line of cases that deal with partial determination of partial withdrawal liability, and there you look at something called base contribution unit, which essentially, to put it in more common sense terms, is work hours of specific employees. Your argument, at least this is what I'm understanding it to be, maybe I've got it wrong, that you were a bargaining party. With regard to old employees, yes, Your Honor. Well, I guess that's debatable. You were a bargaining party, but once your client declared an impasse, you were no longer a bargaining party. Is that correct? Not so, Your Honor. We are a bargaining party with an obligation to contribute always, but the question becomes vis-a-vis which employees. Which employees are in a bargaining unit? At the very beginning of a process, if you and I were negotiating a CBA, where Union and I were just born, I am a bargaining party not vis-a-vis the whole world. I'm a bargaining party vis-a-vis the employees that we agreed to include in the bargaining unit. The same principle applies after a CBA has expired. In this instance, the same principle applies in a sense that our best and final offer at impasse includes some employees and excludes other employees, and this is all that this is about. I know what I asked, and that's where Judge Agee's question is going, but I'm reading that it's bargaining parties with respect to such agreement. I don't know the differentiation of this group of folks and that group of folks. It is the marriage of a definition of a bargaining party and a definition of an obligation to contribute. Again, you are never a bargaining party vis-a-vis the whole world. You're a in the first instance at the front end of a CBA, and in the situation we have here, Your Honor, it is the employees you agreed to cover in your best and final offer. The important thing to understand, Congress never pursues any specific goal to its ultimate conclusion without looking at other goals. Yes, 305, as I'm sure my colleague is going to say, 305E was specifically designed to bolster viability of critical status fund. That is all true, but it was done in a way that balances other competing imperatives. The Supreme Court in a case called Concrete v. Frommit addressed this very carefully, pointing out if you make it too onerous for an employer, nobody would join ERISA plans in the first place. If you make it too onerous for employers, they're going to go bankrupt. If you make it too, this is not a cash cow, 305E, to enable to impose something an employer that is inconsistent with principles of federal labor law. Again, bargaining party, obligation to contribute are granular terms with considerable flexibility for employers. I just wanted to mention briefly one point as to the Second Circuit decision in Harnikin. It's a very illustrative case. In that case, a very similar argument was made, what I would call a heroic over-reading of Section 305E, because the fund wanted to obtain contributions to 305E, but it said, well, you cannot withdraw. That position was rejected by the Second Circuit, essentially on the same basis, saying that the section does not override withdrawal provisions of ERISA, but contain an entirely different section. The fund accepts that. It seems like to me the Second Circuit said, you're going to have to pay one way or the other, whether you pay the withdrawal penalty or whether or not you pay under the revised schedule. So how does that case help you? It helps us by pointing out that 305E does not override other provisions, be they provisions in ERISA itself in the form of withdrawal provisions, or be they provisions in the National Labor Relations Act that enable us to impose our best and final condition after an impasse. The important point, what underlies the Second Circuit decision is not the balancing of equities. Well, you had to pay here this way, therefore it's somehow right, but their ability to reconcile 305E to its proper statutory place vis-a-vis other provisions. Let me just add very, very briefly, we do have insurmountable problem of implied repeal canon. If you were to construe 305E, 305E is put in the subchapter one of ERISA, that is an addition of a general canon against implied repeal as a specific provision in Section 514D. That provision, by the way, has absolutely wonderful, expansive language, does not amend, does not alter, does not change any provisions of law. That applies, of course, to all federal laws, but particularly applies to NLRA. So there are insurmountable problems with both as a matter of basic statutory analysis, if you look at 305E as added by 305J, 4212, problem with absurd results, problem with inconsistency with honeycomb. Thank you, Mr. Rifkin. You've got some time on the reserve, and Ms. Clark, we'll hear from you. May it please the court, I'm Julia Penny Clark here on behalf of the Pension Fund. The district court's interpretation here followed the statutory language precisely. I have a question from the outset that goes to what your opposing counsel put forth, and that's this business on bargaining party. He says, I'm going to make sure I get it right now. You heard him, so you make sure you get it right. As I understand it, it's not a bargaining party for the new folks coming in, that it's only for the people who are there. Is that differentiation there, that once you come to an impasse, you're not a bargaining party for the new folks, but you are for those there, and that's why you can treat them differently? There are two insurmountable problems with his argument on that. Number one, there is anywhere else that Justborn has cited that supports that differentiation. The statutory language is bargaining party with respect to the agreement, as you yourself pointed out, Judge Winn, when he was arguing. Is the agreement at the end of the 180 days when you reach an impasse, does that become the old schedule? It is the expired agreement under the statute, and what the 305E says is that the agreement is that the schedule of contributions that was in that agreement, which just expired, maybe if the bargaining parties don't adopt either that same schedule or one of the others that the pension fund offers, then the pension fund must impose the same schedule that was in the old agreement, along with any updates that may have occurred as of the time the  Who has the schedule apply to, though? I think that's his argument. And that's what I wanted to... Let me finish. Under the CBA, you're going to have certain individuals that qualify as participants in this plan. So I assume that your position would be the CBA is still in place because of the terms of the ERISA provision, and whatever the terms are in the CBA, that covers former employees as well as new folks because the agreement's deemed to continue on. Is that your position? Not precisely, Your Honor. I think it would be helpful if you actually see what the collective bargaining agreement provided. Joint Appendix 27 contains the pension fund provision that was in the agreement that expired. So this is what the parties had agreed to back in 2012 before the pension fund was in critical status. And it says that the... I'm looking here at the paragraph that's numbered two, a little below the middle of the page. The employer agrees to make payments to the pension fund for each employee working in job classifications covered by a collective bargaining agreement between the employer and the union. Two paragraphs below that, it specifies to make sure there's no doubt about it, contributions shall be paid from the first day the employee begins working in a job classification covered by the collective bargaining agreement. So of its very terms, it says as people are hired, they get covered. And they get covered on the very first day they start to work. Now the collective bargaining agreement defines the people who are covered by the collective bargaining agreement on Joint Appendix 15 as all inside production employees. So that means, so everybody who's working on production of the candy in the plant. So basically, if you're deemed a participant under the collective bargaining agreement, even after the expiration of the collective bargaining agreement, it's deemed to still be in force. The obligation of the employer continues by virtue of labor law once the agreement expires during the period that the parties are bargaining and have not yet reached impasse. That's the obligation under applicable labor law. That's the second branch of the definition of bargaining party and obligation to contribute. But what it, I mean, clearly there's not anything there that says, but wait, if you haven't yet hired somebody, suddenly they're treated differently and you don't have an obligation with respect to them. The obligation attaches to the bargaining unit where these people are working in these inside production jobs and anyone who comes in and works in that job is covered by the obligation to contribute. There's nothing in the statute that says that the employer gets to say, but wait a minute, anybody who hasn't yet walked into that plant and set foot and worked the first hour is now outside of my contribution obligation and I'm not a bargaining party with respect to them. Their bargaining obligation under the National Labor Relations Act extends to the bargaining unit. The bargaining unit is defined as the jobs. The job classification is covered here, not specific people. Precisely, Your Honor. Precisely. So, you know, they've cited absolutely nothing that they have to be a bargaining party with respect to those particular individuals in order for the pension fund to impose its schedule on them. But even more to the point, in their reply brief when they're summarizing their argument, they say to you on page one that in order to be subject to this requirement under 305E, they have to have a present tense obligation to contribute to a critical status pension fund on that 180th day when the collective bargaining agreement, you know, 180 days after the agreement expired. And they say that in order to argue to you that their interpretation doesn't deprive the statute of all meaning, they say our interpretation does apply to an employer that retains such an obligation after the expiration of the collective bargaining agreement. Well, they've been admitting, starting with paragraph 52 of their answer and continuing through both of their briefs in this appeal, that they did have a present tense obligation to contribute to the pension fund on the 180th day. It's with respect to all of the other employees that were already there. So the agreement expired. Isn't there a point that the obligation to contribute expired when the agreement expired? The obligation under the agreement, yes, Your Honor, it did expire. They continue to be a bargaining party because they have an obligation under the National Labor Relations Act to comply with the terms of that agreement as long as either A, they have not yet bargained to impasse, or if they've bargained to impasse and they've implemented their own last, best, final offer, then they have an obligation under the National Labor Relations Act to comply with the terms they've implemented until and unless they bargain to impasse again and implement something different. Or they could withdraw and pay a penalty. They can't just do nothing. Correct, Your Honor, and that's why the Hohnerkamp case from the Second Circuit truly does not help them, and the District Court got that exactly right. And the basis of the Hohnerkamp case was the Second Circuit looking at the statute as Congress passed it in 2006. That was the first round of trying to address the critical status issues with multi-employer pension funds. That Congress, at the very same time that it created these special obligations of critical status employers, also amended the withdrawal liability provisions in ways that specifically applied to critical status plans. So that was all based quite firmly on the intent of Congress in enacting that. And I mean, I think probably the next most important point is this notion that if you accept the District Court's interpretation of the statute, then you've either violated the canon against implied repeal, or you're violating the terms of Section 514D of ERISA. I pause just to note that 514D was never cited to the District Court, was never argued to the District Court, and it is indeed a very separate argument, which we believe is waived on this appeal. But even if it were here, there is a very simple answer to that argument. Section 8A5 and Judge Thacker, you're exactly right, there's nothing in the National Labor Relations Act itself that gives the employer this right to impose, implement, its last best offer on impasse. That is case law that has interpreted Section 8A5 of the National Labor Relations Act to that effect. That case law has never had any effect on the requirements of other laws that employers have to comply with. So that this employer can bargain to impasse, it can implement its last best final offer, but when it does that, it can't write itself an exemption from some other law that limits what employers can do. If you just take, for example, the Minimum Wage Act, if tomorrow Congress were to raise the minimum wage to $15 an hour, unrealistic, hypothetical, but yesterday the employer could have bargained to impasse and imposed its final offer of a minimum wage of $13 an hour. After Congress passes that amendment, it can't do that anymore. Now the $13 an hour minimum wage is a term that it can no longer unilaterally implement. But Congress did not impliedly repeal its right to bargain to impasse and then impose its last best and final offer. You don't look at that later enactment with the question of is there any way that we can read this not to impliedly repeal that right. One deals with process, the other deals with substance. And there is simply no impact. So that in the 50 years that this bargaining to impasse rule has been accepted by the National Labor Relations Board in the courts, all of the amendments to workplace rules that Congress has enacted, they've not been implied repeals of the employer's right to bargain to impasse. The second circuit's case, Hunnicant. Your Honor, the difference is simply that the employer did withdraw completely from the pension fund, which meant that it was subject to the withdrawal liability that the statute requires. And here, what the employer wants to do, as the district court very aptly observed, is not to withdraw, and in fact, to effectively taper off its contributions by attrition. But it can withdraw. It can. You'd have to pay that penalty, Judge Thacken, to stop it. It's a withdrawal liability. It's a substantial amount of money. It is that employer's fair share of the unfunded vested benefits that have accumulated within the pension fund while the employer was contributing. And that's what withdrawal liability is all about. And the reason there's no partial withdrawal here is that partial withdrawal is defined in very technical terms in Section 4205 of ERISA. And it would occur eventually, as these contributions taper off, if you say you start here with covering the full bargaining unit, and over time, as employees leave and so forth and are replaced and they're no longer covered, that contribution number is going to keep going down. When it reaches a point that's below 30 percent of a prior year's average and stays there for three years, then there's a partial withdrawal. But that's somewhere off in the future. They then start drawing benefits, for which there isn't a contribution to offset the cost. That is exactly right, Judge Agee, and that is why this pension fund has never permitted employers to carve out new employees and to say, okay, everybody who's already accrued a benefit is now covered, and they've got their benefits, and we're not going to contribute for anybody whose future hires, because what that means is the contribution flow will not support those prior benefits. You're exactly right about that. There's one other point that in terms of trying to reconcile the new statute to the old that just borne in its reply brief cited the case of Morton v. Mancari, which not only addresses this implied repeal point, but also makes the stronger point, which is that when you have a statute that deals with something in general terms and another statute that deals in specific terms, the specific statute controls over the general, and that's clearly the case that we have here. We have the general labor law duty to bargain in good faith, and we have a very specific provision that Congress enacted in 2014 to address these critical status funds. If the court has any concerns about the procedural ruling, I'd be glad to address them. I don't want to waste the court's time on something that is of no concern. Thank you very much. Mr. Rivkin. Your Honor, it's very important to clarify, but the language in the CBA that Judge Wynn had a colloquy regarding job classifications applied only by virtue of CBA, while CBA was in effect. As soon as CBA expired, obligations under federal labor management law continued that obligation, or let's say loosely, keep part of employee obligations. But as soon as the impasse was declared, as soon as it was declared, it was supplanted by the terms of an employer best and final offer. To put it crisply, from that moment on, the new employees were never employees that began working in job classification covered by the CBA agreement between the employer and the union. It is absolutely untrue to say that we were in any kind of violation of the CBA. CBA has nothing to do with it anymore. If they were concerned about the CBA, they would have tried to bring some actual never-planned documents with them. They did not. What statute or law supports your position that you can differentiate between old and new employees on the bargaining party? Our position is broadly, and by the way, again, to reaffirm the whole point about impasse and Section 8D, there is a Supreme Court case. I understand. We have an unfettered right to put forward anything in our best and final offer so long as it is not an unfair labor practice. And where does... I would say in addition to Section 8D, there is a Supreme Court case called LRB, American National Insurance Company. It is on page 40 of our appellate brief, but let me make a couple of other points. The Supreme Court has held, in terms of how this whole point has been developed in cases, the Supreme Court held the canon against implied repeal as both full strength to preclude a proposed interpretation from setting a longstanding judicial reading of undefined statutory term. That is Cook County v. United States v. Chandler. You held the same thing, Your Honors, in the case called Maharaj. The whole point about $15 an hour federal minimum wage law, this is not a case of implied repeal. Implied repeal is a statutory interpretation canon. If you have another statute that imposes a clear obligation that is unambiguous, like $15, it is an express repeal. We're talking here about an implied repeal. And even what's important for you to appreciate, the district court itself candidly acknowledged that implied repeal effect. They used a fairly anodyne term. They used the word impose. In our view, it's not an impose. They said, yes, my reading of 305E does impose on your labor law rights. Anodyne in our opinion. It doesn't impose. It blows it up completely. Well, before you brought this case, I thought it was pretty straightforward that when you got that 180, you reached that so-called unpassed, that gave you an opportunity as a company or entity, as the Hunnicutt case says, to withdraw. You withdraw, you get a penalty in a game. What you've now done is, don't you think, well, haven't you found a neat little way to get away from withdrawal with a penalty? Now you can simply say, oh, we don't have a bargaining agreement with the new folks coming in. We do with the old, so we can get rid of it now. Basically, you've gotten rid of the Hun in a circular way that I don't think anybody has ever done. Not at all, your honor. To answer you very specifically. This is common. This has been done before. There are a variety, let me say, there are a variety of ways for employers to limit their... Has this been done before? Not to the best of my knowledge, but... You would be the first to do such a thing as this. What I'm trying to say... Don't say that, that's not that you can't. I'm just saying, but you would be the first. What I'm trying to say is that at the heart of national labor relations law... I want you to answer Judge Wynn's question. You agree that this is a new paradigm, that there is no case that has taken up this type of fact-setting before? That is correct, but what I'm trying to say is that it is a heroic over-interpretation of Section 305E to say that it is only about giving here and now pension funds in critical status. There are numerous other ways. An employer can declare bankruptcy. An employer can have facilities in a different state that is a right-to-work state. An employer can reach an agreement with a union that is different in terms of its coverage. There are many opportunities for an employer to not do as much in the way of contributions to the pension fund and critical status of the plan of fiduciary is one. They're all equally legitimate. Any over-interpretation of this approach would absolutely, and again Supreme Court addressed it in court right, would make sure... Think about it for a second. We're talking about the Helltale, California approach. Once you have a misfortune of joining, which you don't have to do in the first place. Again, the point to underscore, national labor relations law does not require an employee to accept any obligation. They're quite a bargain in good faith. We're talking about contributions to the fund, which is a portion of the overall package of wage and benefits. An employer doesn't have to accept any of them. An employer doesn't have to join the fund. And if employees knew that joining the fund is a Helltale, California type situation, you can check in, you can never check out, none of them would. That would not be good for pension funds. And Congress legislated a full awareness of all those propositions. Thank you, Your Honor. Thank you very much. We'll come down to Greek Council and pick up our last case.
judges: G. Steven Agee, James A. Wynn, Jr., Stephanie D. Thacker